## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

**ANDREW JOSEPH KATSOCK, III** :

       **Appellant** : **CIVIL ACTION NO. 3:22-612**

    **v.** : **(JUDGE MANNION)**

**JOHN J. MARTIN, ESQ, and** :
**UNITED STATES TRUSTEE**
                     :

      **Appellees**

                     :

### <u>MEMORANDUM</u>

Before the court is the appellant's, Andrew J. Katsock, III, appeal of two orders of the Bankruptcy Court, one denying his application for attorney's fees (the "Fee Application"), and the other denying his motion for a stay of the ordered release of a portion (equal to his attorney's fees) of the debtor's funds to the Chapter 11 Trustee (the "Holdback Motion"). (Doc. 1). The appeal requires this court to determine whether the Bankruptcy Court abused its discretion in denying Mr. Katsock his attorney's fees based on his undisclosed concurrent representation of the sole shareholder and co-debtor of the Chapter 11 Debtor. Since the court does not detect any error in the record below, the orders of the Bankruptcy Court will be **AFFIRMED** and appellant's appeal will be **DENIED**.

## I.   <u>BACKGROUND</u>

Corporate bankruptcies are often complex matters with many moving parts. Nevertheless, the factual and procedural background relevant to this bankruptcy appeal is comparatively straightforward.

On February 14, 2019, Witchey Enterprises, Inc. ("Witchey Enterprises" or "Debtor"), filed a voluntary Chapter 11 bankruptcy petition indicating that it was a small business debtor as defined in 11 U.S.C. §105(51D). Witchey Enterprises' principal assets are Federal Express route and delivery contracts. Mr. Louis Witchey is the company's president and sole shareholder. Mr. Witchey, LDW, Inc., and Dana Lee Witchey were identified on Witchey Enterprises' bankruptcy schedules as co-obligors of many of its debts.

Mr. Katsock, the appellant, filed the Debtor's Chapter 11 petition. His compensation disclosure, which he was required to file pursuant to 11 U.S.C. §329(a) and Rule 2016(b) of the Federal Rules of Bankruptcy Procedure, requested a $20,000 fee "for services rendered on behalf of the debtor(s) in contemplation of or in connection with the bankruptcy case," of which he received $5,000 pre-petition paid by the Debtor. However, Mr. Katsock did not file an application under 11 U.S.C. §327(a) to be employed to represent

the Debtor when he filed the bankruptcy case—a prerequisite for attorney compensation. *See* §§330, 331.

A little over a year after the Debtor filed the bankruptcy petition, the United States Trustee filed a motion to dismiss the case or convert it to one under Chapter 7 of the Bankruptcy Code for several reasons, including: (1) the Debtor's failure to employ professionals under §327 even though its monthly operating report for January 2020 disclosed payments totaling $10,917 to professionals since filing its case; (2) the Debtor's failure to comply with a court order directing the Debtor to file the documents that small business debtors must file under §1116 and an amended disclosure statement providing adequate disclosure of the Debtor's proposed reorganization plan as required by §1125; and (3) the Debtor's failure to confirm a plan within the time established by §1129(e). The Bankruptcy Court initially granted the motion based on late payment of the Chapter 11 quarterly fee by the Debtor, but later vacated it and converted the matter back to Chapter 11 upon a Motion for Reconsideration filed by Mr. Katsock.

Next, the Bankruptcy Court entered an order directing that all administrative expense requests under §503 be filed. In response, Mr. Katsock at last sought authorization under §327 to be employed as debtor-in-possession counsel, filing an application under §327(a) requesting such

employment *nunc pro tunc* to the petition date and approval of $37,221.35 in compensation for services rendered since the petition date. In the application, Mr. Katsock represented that he "does not hold or represent an interest adverse to the estate," "is a disinterested person as that term is defined in section 101(14) of the Bankruptcy Code," and "is not employed by and does not represent a creditor in this case." (Doc 40-1 at 7).[1] He further stated he had no "connections with the debtor, creditors, and any other parties in interest." (Doc. 40-1 at 8).

In a supporting sworn declaration, Mr. Katsock affirmed that he had "represented and advised the Debtor as an attorney with respect to business matters and matters involving the instant bankruptcy both before [sic] and [at] the time of the Debtor's initial filing for Chapter 11 relief[.]" (Doc. 40-1 at 10). He further stated that he "do[es] not have any connection with the Debtor or currently represent[] any of [its] creditors [or] other parties-in-interest . . . with respect to the matters upon which he is to be engaged" and "does not, by reason of any direct or indirect relationship to, connection with, or interest in the Debtor, hold or represent any interest adverse to the Debtor, its estate,

---

[1] Citations to the court's docket in this appeal are herein rendered "(Doc. [number])." Citations to the Bankruptcy Court's docket below, *Witchey Enterprises, Inc.*, Bankr. M.D. Pa. Case No. 5:19-cv-00645 (HWV), are rendered "(Bankr. Doc. [number])."

or any class of creditors or equity holders." (Doc. 40-1 at 12). Mr. Katsock also declared that he "has not in the past represented, currently represent, nor in the future represent entities that are claimants of the Debtor in matters entirely unrelated to the Debtor and its estate" and "does not and will not represent any such entity in connection with this Chapter 11 Case and does not have any relationship with any such entity . . . that would be adverse to the Debtor or its estate." (Doc. 40-1 at 12–13). The United States Trustee objected to Mr. Katsock's request for *nunc pro tunc* employment.

The Bankruptcy Court authorized the Debtor to employ Mr. Katsock, but only as of the date of the Court's order, not *nunc pro tunc* to the petition date. The Court noted in its order that "[c]ompensation and reimbursement of expenses are to be allowed only by Order of this Court upon submission of an Application in conformity with *In re Busy Beaver Building Centers, Inc.*, 19 F.3d 833 (3d Cir. 1994)." (Bankr. Doc. 271). A few months later, Mr. Katsock filed an application for approval of a general retainer agreement under which he would receive a $25,000 fee. At a hearing on the application, the Bankruptcy Court explained that Mr. Katsock's employment had not been approved under the nonrefundable $25,000 flat fee he was proposing, but had instead been approved under the terms of employment he had originally proposed: he had received a $5,000 retainer and would request that his

services be compensated at his hourly rate by submitting a fee application in compliance with 11 U.S.C. §330(a), Rule 2016(a), and Local Rule 2016-1. The court thus denied the application to approve the general retainer agreement without prejudice to Mr. Katsock submitting a proper fee application.

Next, Mr. Katsock filed the Fee Application seeking $13,637.70 for services rendered for the preceding seven months. (*See* Doc. 38-2 at 9–15). Mr. Katsock rendered a significant number of services to the Debtor throughout the bankruptcy proceedings, including aiding the Debtor in the sale of its "Linehaul" routes to the Fairview Group, which allowed the Debtor to extinguish upwards of $400,000 in secured debt. (*See* Doc 38 at 9). In his Fee Application, Mr. Katsock reiterated that he "does not hold or represent an interest adverse to the estate," "is a disinterested person as that term is defined in section 101(14) of the Bankruptcy Code," "is not employed by and does not represent a creditor in this case," and has no "connections with the debtor, creditors, and any other parties in interest." (*See* Doc. 38-2 at 9–15).

Next, for various reasons related to a lack of progress in getting a plan confirmed, the Bankruptcy Court ordered the appointment of a Chapter 11 trustee and deferred ruling of Mr. Katsock's Fee Application. The United States Trustee appointed a Chapter 11 trustee, who asked Mr. Katsock to

turn over all estate funds he held in escrow. In response, Mr. Katsock filed the Holdback Motion, requesting the court let him turn over only $82,055.95 to the trustee and hold back his $13,637.70 requested fee until the court ruled on the Fee Application. (*See* Doc. 38-2 at 31–41). The Chapter 11 trustee moved to compel Mr. Katsock to turn over the full amount in escrow, and one of the Debtor's creditors objected to the Holdback Motion. The Bankruptcy Court entered an order under 11 U.S.C. §543 directing Mr. Katsock to turn over all but the $13,637.70 at issue in the Fee Application.

The Chapter 11 trustee also objected to the Fee Application, asserting he had learned that, during the Debtor's bankruptcy case, Mr. Katsock had performed legal services for the Debtor's principal, Mr. Witchey, and Mr. Witchey's daughter. The Bankruptcy Court held a hearing on the Fee Application and the Holdback Motion. At the hearing, Mr. Katsock told the Bankruptcy Court that he had rendered services to Mr. Witchey personally on state court matters before and during the Debtor's bankruptcy case. (Doc. 38-3 at 15). This included a matter in which a creditor of the Debtor was proceeding against Mr. Witchey because the automatic stay of the Debtor's case did not extend to him personally. The Chapter 11 trustee argued that the Fee Application should be denied due to Mr. Katsock's failures to disclose his representation of the Witcheys and the fact that the Debtor's

Scranton FedEx route had already been transferred to another company under an asset purchase agreement several months before Mr. Katsock filed a motion to approve the sale. The United States Trustee argued the Debtor's June 2019 operating report revealed that Mr. Witchey had made unauthorized loans to, and received unauthorized loan repayment from, the Debtor during the bankruptcy case. The United States Trustee argued further that this relationship made Mr. Witchey a post-petition creditor and Mr. Katsock's concurrent representation of Mr. Witchey the Debtor gave rise to a conflict of interest.

The Bankruptcy Court agreed and denied the Fee Application, finding, *inter alia*, Mr. Katsock had not disclosed his representation of Mr. Witchey, which created two "classic conflict[s] of interest": representation of the Debtor and its principal, and representation of the Debtor and its creditor. (Doc. 38-3 at 15–19). The Bankruptcy Court further found that under the circumstances of this case, denial of all fees was the appropriate remedy even if the failure to disclose the conflict of interest was inadvertent. The Bankruptcy Court then denied the Holdback Motion as moot since the Fee Application was denied. The Bankruptcy Court entered orders denying the Fee Application and Holdback Motion; Mr. Katsock timely appealed.

## II.  STANDARD OF REVIEW

This court has appellate jurisdiction over the appellant's appeal of the Bankruptcy Court's orders pursuant to 28 U.S.C. §158(a)(1) (The district court has "jurisdiction to hear appeals from final judgments, orders, and decrees" of a bankruptcy court). *See In re Michael*, 699 F.3d 305, 308 n.2 (3d Cir. 2012) ("[A] district court sits as an appellate court to review a bankruptcy court."). When a district court sits as an appellate court over a final order of a bankruptcy court, it reviews the bankruptcy court's legal determinations *de novo*, its findings of fact for clear error, and its exercise of discretion for abuse of discretion. *In re Trans World Airlines, Inc.*, 145 F.3d 124, 131 (3d Cir. 1998); s*ee also In re Zinchiak*, 406 F.3d 214, 221-22 (3d Cir. 2005) (explaining that the district court reviews "the Bankruptcy Court's findings of fact for clear error and exercises plenary review over the Bankruptcy Court's legal determinations.").

A factual finding is clearly erroneous only if it "either is completely devoid of minimum evidentiary support displaying some hue of credibility or bears no rational relationship to the supportive evidentiary data." *Fellheimer, Eichen & Braverman, P.C. v. Charter Techs., Inc.*, 57 F.3d 1215, 1223 (3d Cir. 1995) (internal quotation marks omitted). Findings supported by the record are not clearly erroneous, even if the record could support a different

conclusion. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.").

"[T]he bankruptcy court's decisions regarding the awarding of fees are reviewed for abuse of discretion." *In re Engel*, 124 F.3d 567, 571 (3d Cir. 1997). Similarly, "issues within the equitable discretion of a bankruptcy court should be overturned only for abuse of discretion." *Gerard v. W.R. Grace & Co. (In re W.R. Grace & Co.)*, 115 F. App'x 565, 568 (3d Cir. 2004). Evidentiary decisions are also reviewed for abuse of discretion. *See General Elec. Co. v. Joiner*, 522 U.S. 136, 141-42 (1997) ("All evidentiary decisions are reviewed under an abuse-of-discretion standard."). A court abuses its discretion when it "bases its opinion on a clearly erroneous finding of fact, an erroneous legal conclusion, or an improper application of law to fact." *Prosser v. Gerber (In re Prosser)*, 777 F.3d 154, 161 (3d Cir. 2015) (internal quotation marks omitted). As a result, "[u]nder the deferential abuse of discretion standard," the bankruptcy court's decision is only reversed when it "is arbitrary, fanciful, or clearly unreasonable—in short, where no reasonable person would adopt the [bankruptcy] court's view." *In re VistaCare Grp., LLC*, 678 F.3d 218, 232 (3d Cir. 2012) (internal quotation marks omitted).

- 10 -

III.   <u>DISCUSSION</u>

Attorneys who render legal services over a significant period of time understandably want to be paid for those services. However, when an attorney endeavors to represent a corporation in Chapter 11 bankruptcy proceedings, there are certain, nonnegotiable procedural hoops to jump through and legal ditches to avoid in order to be compensated. One of those "ditches" to avoid is conflicts of interest. The Bankruptcy Court has considerable discretion in determining whether an attorney has a conflict of interest, and, if it does so, the Bankruptcy Court has considerable discretion in fashioning the appropriate remedy, including denial of fees. The Honorable Chief Bankruptcy Judge Van Eck unerringly found Mr. Katsock had a conflict of interest and appropriately exercised his discretion in denying Mr. Katsock his requested fees. For that reason, the court will affirm.

**A.   Conflict of Interest**

Mr. Katsock takes issue with the finding below that his simultaneous representations of Mr. Witchey and the Debtor constituted a conflict of interest. Section 327(a) of the Bankruptcy Code "authorizes the trustee (and, under §1107(a) of the Code, a debtor in possession), with court approval, to employ professionals, including lawyers, if they (1) 'do not hold or represent an interest adverse to the estate' and are (2) 'disinterested persons.'" *In re*

*Boy Scouts of Am.*, 35 F.4th 149, 157 (3d Cir. 2022) (quoting 11 U.S.C. §327(a)). In relevant part, "disinterested persons" are defined as those who do "not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders by reason of any direct or interest relationship to, connection with, or interest in, the debtor, or for any other reason." 11 U.S.C. §101(14)(C). "Save the 'any other reason' catchall, the focus dead ends at the debtor and especially its estate." *Boy Scouts*, 35 F.4th at 157. While not representing an adverse interest and being disinterested are "formally distinct," in many cases "they effectively collapse into a single test." *Id.* (citing COLLIER ON BANKRUPTCY ¶8.03[9] (16th ed. 2022) (noting that "[t]hese two tests invoke the same consideration of whether the professional holds or represents an adverse interest to the interests of the debtor and its estate")).

> Section 327 conflicts can be sorted into three subcategories: (1) actual conflicts of interest, (2) potential conflicts of interest, and (3) appearances of conflict. [*In re*] Marvel [*Ent. Grp., Inc.*], 140 F.3d [463,] 476 [(3d Cir. 1998)]. The implications of an apparent conflict depend on which category it fits. Attorneys with actual conflicts face *per se* disqualification, but disqualification is at the court's discretion for attorneys with potential conflicts. *Id.* And a court "may not disqualify an attorney on the appearance of conflict alone." *Id.*
>
> Though not unfettered, bankruptcy courts have "considerable discretion in evaluating whether professionals suffer from conflicts." *In re Pillowtex, Inc.*, 304 F.3d 246, 254 (3d Cir. 2002). Indeed, actual conflicts of interests in the §327 context do not

have a strict definition. *Id.* at 251. Courts thus proceed "case-by-case." *Id.* ([citation omitted]). Pragmatically, a conflict is actual when the specific facts before the bankruptcy court suggest that "it is likely that a professional will be placed in a position permitting it to favor one interest over an impermissibly conflicting interest." *Id.*

*Boy Scouts*, 35 F.4th at 157–58.

Here, the Bankruptcy Court determined that Mr. Katsock's concurrent representation of the Debtor and Mr. Witchey was a "classic conflict of interest" since it entailed "representation of the debtor and principals of the debtor simultaneously." (Doc. 38-3 at 16–18). The Bankruptcy Court also found that Mr. Katsock's concurrent representation of the Debtor and Mr. Witchey created another classic conflict of interest, namely, simultaneous representation of a debtor and its creditor, because there was a loan made from Mr. Witchey to the Debtor at a time when Mr. Katsock represented both of them. (Doc. 38-3 at 18). The court does not detect error in either of these findings, and, in fact, both findings are supported by persuasive case law.

While not a *per se* bar in every case, several courts have held simultaneous representation of the debtor and its principal to be a conflict of interest because the attorney's representation of the principal means he "represents an interest adverse to the estate." 11 U.S.C. §372(a). As the court in *In re Straughn*, 428 B.R. 618, 626 (Bankr. W.D. Pa. 2010), explained, "The resulting conflict for an attorney representing both a corporation and its

majority shareholder, who controls the corporation, is the risk that the shareholder in control will instruct counsel in ways that favor her interest as guarantor at the expense of her fiduciary duty to the corporation."[2] Moreover, that simultaneous representations of a debtor and one of its creditors constitutes at least a potential conflict of interest is hornbook bankruptcy law.

Mr. Katsock argues the Court below was mistaken in identifying Mr. Witchey as a creditor of Witchey Enterprises, since Mr. Witchey was merely the sole shareholder and guarantor of Witchey Enterprises' debts, and "[n]o proof was offered at the April 12, 2022[,] Bankruptcy proceedings that [Mr.] Witchey had a claim against the Estate 'that arose at the time of or before the order for relief concerning the debtor.'" (Doc. 38 at 12) (citing 11 U.S.C. §101(10)(A)). This argument would not relieve Mr. Katsock of the issue presented by his representation of Mr. Witchey as the Debtor's principal and is nonetheless mistaken. The record below and Mr. Katsock's own

---

[2] *See id.* at 625 n.7 (citing *Fellheimer*, 57 F.3d at 1229 (once attorney abandoned fiduciary obligations as counsel to debtor corporation and undertook representation of individual shareholder he became hostile to debtor corporation and its creditors); *In re Angelika Films 57th, Inc.*, 246 B.R. 176, 180 (S.D.N.Y. 2000) (commenting on the difficulties inherent in a situation where the principal of a debtor and the debtor are represented by the same counsel); *In re Plaza Hotel Corp.*, 111 B.R. 882, 890 (Bankr. E.D. Cal. 1990) (interests of owner guarantors and interests of debtor corporation are not identical and "there is a persistent risk that those in control will instruct counsel in ways that favor their interests, *qua* guarantors, at the expense of their interests, *qua* owners")).

admissions in his briefs before this court demonstrate Mr. Witchey was a guarantor of Witchey Enterprises' debts; indeed, Mr. Witchey was identified on the Debtor's bankruptcy schedules as a co-obligor as to many, if not all, of its debts. (Doc. 18). "Sections 101(5)(A) and 101(10)(A) of Title 11 provide that a guarantor is a creditor of the debtor, because a guarantor has a contingent right to payment." *In re Oconee Reg'l Health Sys., Inc.*, 621 B.R. 64, 73 (Bankr. M.D. Ga. 2020) (citing *Davis v. Walker (In re Wefelmeyer Constr. Co.)*, No. 93-442251-172, Adv. No. 94-4344-172, 1997 WL 37574, at *2 (Bankr. E.D. Mo. Jan. 14, 1997)). Moreover, "[a] guarantor is a contingent creditor because it has 'a potential claim for reimbursement against the debtor if it defaults on a loan and the guarantor[] [has] to satisfy the debt.'" *Id.* (quoting *Houston Heavy Equip. Co., Inc. v. Gould*, 198 B.R. 693, 694 (S.D. Tex. 1996)). In addition, the post-petition loan from Mr. Witchey to the Debtor plainly made Mr. Witchey a creditor. Thus, the Bankruptcy Court did not err in considering Mr. Witchey a creditor of the Debtor when making its conflict of interest finding.

Mr. Katsock next contends the Third Circuit's recent precedential opinion in *Boy Scouts* controls this case and demonstrates he did not have a conflict of interest. Specifically, Mr. Katsock seeks refuge under the Court's holding that "[b]ecause Sidley's [a law firm] relationship to Century [the

debtor's insurer/creditor] did not affect its ability to advocate on behalf of BSA [the debtor], it was not an 'actual conflict' under §327[.]" (Doc. 38 at 17) (citing *Boy Scouts*, 35 F.4th at 159). The facts of this case are distinguishable from *Boy Scouts*. Unlike Mr. Witchey's relationship to Witchey Enterprises, Century was not the sole shareholder and co-debtor of BSA, nor did Century loan money to BSA during the bankruptcy proceedings. In addition, the Third Circuit in *Boy Scouts* was satisfied with Sidley's ability, as a large law firm, to place an ethical screen between the two distinct groups of lawyers within the firm working on matters for BSA and Century that may have been potentially adverse; here, Mr. Katsock represented Mr. Witchey and the Debtor himself. In addition, the matters for which Sidley represented BSA and Century were more remote than those for which Mr. Katsock represented the Debtor and Mr. Witchey. As explained above, Mr. Katsock represented Mr. Witchey in state proceedings initiated by creditors against him as Witchey Enterprises' co-debtor since the automatic stay did not apply to Mr. Witchey; Sidley's representation of Century involved a reinsurance dispute to which BSA was not a party. Thus, *Boy Scouts* in no way demonstrates the Bankruptcy Court abused its discretion in finding a conflict of interest on the facts of this case.

Lastly, Mr. Katsock alleges the Bankruptcy Court abused its discretion in finding a conflict of interest because no evidence was presented at the hearing that his representation of Mr. Witchey would affect his ability to advocate on behalf of the Debtor. However, Mr. Katsock does not explain how the absence of sworn testimony at the hearing shows an abuse of discretion, and the record below demonstrates there was sufficient evidence in the record such that the Bankruptcy Court did not abuse its discretion in finding at least a potential conflict of interest. It was undisputed at the time of the hearing that Mr. Witchey was the principal and sole shareholder of the Debtor. It was also undisputed that the Debtor's June 2019 operating report stated Mr. Witchey loaned money to the debtor during the pendency of the case. Mr. Katsock admitted, on record, he represented Mr. Witchey in two state court matters, one of which was an action by the Debtor's creditor against Mr. Witchey personally as Witchey Enterprises' co-debtor. On this record, the Bankruptcy Court did not abuse its discretion in not requiring further testimony or other evidence at the hearing.

In sum, the record below supports the finding of the Bankruptcy Court that Mr. Katsock had at least a potential conflict of interest due to his concurrent representation of the Debtor and Mr. Witchey, the Debtor's sole shareholder and co-debtor.

### B. Fee Application

As explained above, "[a]ttorneys with actual conflicts face *per se* disqualification, but disqualification is at the court's discretion for attorneys with potential conflicts." *Boy Scouts*, 35 F.4th at 157. In addition, the court may order the removal of or deny compensation to any professional person if, at any time during the person's employment, such person is not "disinterested" or "represents . . . an interest adverse to the interest of the estate." 11 U.S.C. §328(c).

Here, having found Mr. Katsock's concurrent representation of Mr. Witchey and the Debtor to be a conflict of interest, the Bankruptcy Court exercised its considerable discretion to deny Mr. Katsock's Fee Application. Mr. Katsock argues the Bankruptcy Court's denial of his Fee Application was an abuse of discretion since he performed a lot of work for the Debtor throughout the bankruptcy proceeding, he was initially approved to be employed as an attorney for the Debtor earlier in the case, and he did not represent an interest adverse to the estate. (Doc. 38 at 24–25). However, the Bankruptcy Court properly found Mr. Katsock had at least a potential conflict of interest as explained above. The fact that Mr. Katsock was previously approved to represent the Debtor does not preclude denial of his Fee Application based on a subsequent finding that he had a conflict. And

while Mr. Katsock did perform a nontrivial amount of work for the Debtor throughout the proceeding, the Bankruptcy Court did not abuse its significant discretion in finding he should not be compensated for that work since he had an undisclosed §327 conflict. The Bankruptcy Court did not take denial of Mr. Katsock's fees lightly, nor does this court in affirming that decision; but Mr. Katsock's undisputed representation of the Debtor's sole shareholder and co-debtor provided sufficient ground for the discretionary denial of compensation under §328(c).

Moreover, the Bankruptcy Court was also justified in denying the Fee Application because Mr. Katsock should have disclosed his connection to Mr. Witchey to the Bankruptcy Court. Indeed, "[a]bsent the spontaneous, timely and complete disclosure required by section 327(a) and Fed.R.Bankr.P. 2014(a), court-appointed counsel proceed at their own risk." *Rome v. Braunstein*, 19 F.3d 54, 59 (1st Cir. 1994) (citing *In re Roger J. Au & Son, Inc.*, 71 B.R. 238, 242 (Bankr. N.D. Ohio 1986) (failure to disclose facts material to potential conflict may provide *totally independent* ground for denial of fees, quite apart from the actual representation of competing interests)). It is undisputed that Mr. Katsock did not disclose his relationship to Mr. Witchey despite numerous opportunities to do so—*e.g.*, in his application to obtain employment under §327 where he represented that he

"does not hold or represent any interest adverse to the estate," "is a disinterested person as that term is defined in section 101(14) of the Bankruptcy Code," "is not employed by and does not represent a creditor in this case," and he had no "connections with the debtor, creditors, and any other parties in interest." (*See* Doc. 40-1 at 6–14). Thus, even if Mr. Katsock's representation of Mr. Witchey was not an actual conflict of interest, his failure to disclose his relationship to Mr. Witchey, a party in interest, was an independent ground for the Bankruptcy Court's denial of his fees.

Therefore, Mr. Katsock's potential conflict of interest in representing Mr. Witchey and the Debtor, and his failure to disclosure his relationship with Mr. Witchey, both provided adequate grounds for the Bankruptcy Court to deny his Fee Application.

## C.  Holdback Motion

Finally, Mr. Katsock appeals the Bankruptcy Court's decision to dismiss his Holdback Motion as moot. As a reminder, Mr. Katsock filed the Holdback motion after the Bankruptcy Court ordered the appointment of a Chapter 11 trustee who, in turn, asked Mr. Katsock to turn over all estate funds he held in escrow. In his motion, Mr. Katsock "requested that the Bankruptcy Court permit [him] to continue holding the sum of $13,637.70 in [his] attorney's escrow account *until such time as the Court acts upon*

*Katsock's fee application* and to release the balance of $82,05.95 to the Chapter 11 Trustee." (Doc. 38 at 21, Appellant's Brief) (emphasis added); (Doc. 38-2 at 31–34, Holdback Motion). At the hearing below, the Bankruptcy Court dismissed the Holdback Motion as moot after denying the Fee Application, explaining Mr. Katsock no longer had a lien on any assets of the estate for attorney's fees because his Fee Application was denied.

The appeal of this decision is, frankly, a curious appeal because the record demonstrates that even though the Holdback Motion was technically denied as moot, Mr. Katsock practically received the relief he requested in the motion: he was able to retain the $13,637.70 he thought he was entitled to in fees "until such time as the Court act[ed] upon Katsock's fee application." The Bankruptcy Court denied the Fee Application then dismissed the Holding Motion. The Bankruptcy Court did not err in dismissing the motion as moot after it "act[ed] upon Katsock's fee application"—the relief request by the appellant here.

Mr. Katsock's brief before this court reasserts his arguments for the validity of his common law retaining or charging lien created by his legal services provided to the Debtor. The court need not decide whether Mr. Katsock had such a lien because, even if he did, his request for a stay in the Holding Motion was rendered moot for the reasons just explained. Mr.

- 21 -

Katsock also asserts he has standing to appeal this decision pursuant to *Boy Scouts*. The court does not disagree that Mr. Katsock has standing to bring this appeal; but in light of the foregoing, his appeal will be denied.

**IV.   CONCLUSION**

Based on a careful review of the record below, the court finds that the Bankruptcy Court's denial of the Fee Application and Holdback Motion was proper and should not be disturbed. The appellant's appeal will be **DENIED**. An appropriate order follows.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: April 19, 2023**
22-612-01